# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

DEBORAH WALTON,                          )
                                         )
                    Plaintiff,           )
                                         )
        vs.                              )        Case No. 1:11-cv-00685-SEB-DML
                                         )
BANK OF AMERICA,                         )
BAC HOME LOANS SERVICING LP,             )
                                         )
                    Defendants.          )


## ENTRY DISCUSSING CROSS-MOTIONS FOR SUMMARY JUDGMENT
## AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff Deborah Walton sued defendants Bank of America Corporation ("BOA") and Bank of America, N.A., as successor by merger to Bank of America Home Loans Servicing, LP ("BANA") (collectively, the "BAC defendants") under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA") and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"). Certain claims were dismissed in the Entries of February 17, 2012, and September 6, 2012 (dkts. 26 and 70).

The remaining claims in this action include the FCRA claim in Count IV and the RESPA claims in Counts V and VI. Specifically, Count IV of the Complaint alleges that the BAC defendants violated 15 U.S.C. § 1681s-2(b) of the FCRA by (1) reporting Walton's mortgages as late to credit reporting agencies without noting disputes, (2) failing to properly investigate Walton's dispute after receiving notice from credit reporting agencies of Walton's dispute, (3) failing to accurately respond to credit reporting agencies, and (4) failing to correctly report

1

results of an investigation to credit reporting agencies. *See* Compl., dkt. 1, ¶¶ 44-51. Count V of Walton's Complaint alleges that the BAC defendants violated 12 U.S.C. § 2605(e) of RESPA by failing to timely respond to Walton's November 4, 2010, written request. Count VI seeks an accounting under RESPA.

The BAC defendants move for summary judgment in their favor and against Walton on all of the remaining claims. Walton seeks summary judgment in her favor only as to her RESPA claims in Counts V and VI. For the reasons explained below the BAC defendants' motion for summary judgment [dkt. 102] is **granted** and plaintiff Walton's cross-motion for summary judgment [dkt. 152] is **denied.**

## I. Standard of Review

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (*quoting* Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that

there are no genuine issues of material fact. *R.J. Codman Derailment Serv., Inc. v. Int'l Union of Operating Eng.'s.,* 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmoving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *Oregon v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (*quoting Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. Walton's Motion for Summary Judgment

As previously stated, Walton seeks summary judgment on Counts V and VI of the Complaint. Count V of Walton's Complaint alleges that the BAC defendants violated 12 U.S.C. § 2605(e) of RESPA by failing to timely respond to Walton's November 4, 2010, qualified written request. Count VI seeks an accounting under RESPA.

### A.    RESPA

RESPA was enacted in 1974 with the goal of ensuring that consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Howland v. First American Title Ins. Co.*, 672 F.3d 525, 528 (7th Cir. 2012) (quoting 12 U.S.C. § 2601(a)). The statute imposes a number of duties on lenders and loan servicers. Most relevant here is the requirement that loan servicers respond promptly to borrowers' written requests for information, § 2605(e).

First, it takes a "qualified written request" to trigger the loan servicer's duties under RESPA to acknowledge and respond. As the Seventh Circuit explained in *Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 680-681 (7th Cir. 2011):

> The statute defines a qualified written request as written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error. 12 U.S.C. § 2605(e)(1)(B). To qualify, the written request must also include the name and account of the borrower or must enable the servicer to identify them. *Id.*
>
> Within 60 days after receiving a qualified written request, the servicer must take one of three actions: either (1) make appropriate corrections to the borrower's account and notify the borrower in writing of the corrections; (2) investigate the borrower's account and provide the borrower with a written clarification as to why the servicer believes the borrower's account to be correct; or (3) investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2)(A), (B), and (C) [effective September 30, 1996 to July 20, 2011]. No matter which action the servicer takes, the servicer must provide a name and telephone number of a representative of the servicer who can assist the borrower. *See id.* During the 60–day period after a servicer receives a qualified written request relating to a dispute regarding the borrower's payments, "a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency." 12 U.S.C. § 2605(e)(3).

## B.      Count V

In Count V, Walton alleges that the BAC defendants failed to provide an adequate response to her November 4, 2010, qualified written request. In Walton's cross motion for summary judgment, however, Walton argues that the BAC defendants are liable because they failed to respond to her May 2, 2010, qualified written request.

In response, the BAC defendants argue that Walton's cross-motion fails because Walton seeks relief based solely on an alleged written request that was not pled anywhere in the Complaint. The BAC defendants are correct. Walton is not entitled to relief based on the May 2, 2010, qualified written request because the alleged violation flowing from that request was not

pled in the Complaint. Nor was the May 2, 2010, qualified written request attached to the Complaint along with the November 4, 2010, qualified written request. Walton shall not be permitted to amend her Complaint to add claims related to an alleged May 2, 2010, qualified written request through summary judgment briefing. *Conner v. Ill. Dept. of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Under these circumstances, Walton's cross-motion for summary judgment [dkt. 152] as to Count V is **denied.**

### C.      Count VI

Walton's cross-motion for summary judgment also seeks summary judgment as to Count VI. Count VI seeks an accounting under RESPA. Walton's briefing of her cross-motion does not provide any basis upon which the Court could conclude that she is entitled to an accounting under RESPA. Accordingly, Walton's cross-motion for summary judgment [dkt. 152] as to Count VI is **denied.**

## III.  BAC Defendants' Motion for Summary Judgment

### A.      Facts Not in Dispute

The task of compiling the undisputed facts in the light most favorable to Walton, the non-moving party, was particularly difficult given both the form and substance of Walton's responsive filings. In regards to form, Walton was specifically directed to file a single response in opposition to defendants' motion for summary judgment and cross-motion for summary judgment. See dkt. 147. Instead of filing one brief as directed, she filed three: Plaintiff's Response to the Defendant Bank of America's Motion for Summary Judgment, dkt. 150, Memorandum in Further Support of Plaintiff's Response to the Defendant Bank of America's

Motion for Summary Judgment, dkt. 151, and Memorandum in Further Support of Plaintiff's Cross-Motion for Summary Judgment, dkt. 153. Each of these briefs includes a unique Statement of Material Facts in Dispute or a Statement of Material Facts Not in Dispute. In regards to substance, Walton repeatedly failed to provide pinpoint citations to admissible evidence. Having overcome these obstacles, the following facts are considered undisputed for the purposes of determining the BAC defendants' motion for summary judgment.

*Loan Origination*

Deborah Walton entered into two mortgage loan agreements with BANA in 2005. First, on February 3, 2005, Walton entered into a mortgage loan agreement in the principal amount of $244,800 (the "Broadway Mortgage") to finance the purchase of property located at 4220-4222 North Broadway, Indianapolis, Indiana, 46205.

Subsequently, on August 25, 2005, Walton entered into another mortgage loan agreement with BANA in the principal amount of $98,000 (the "Banbury Mortgage") to finance the purchase of property located at 5029-5031 North Banbury Drive, Indianapolis, Indiana, 46226.

BANA, has been the servicer of Walton's loans since origination, although the Banbury Mortgage was recently released to Specialized Loan Servicing, LLC, so BANA remains the servicer for only the Broadway Mortgage.

*Escrow Charges for Delinquent Taxes*

Both the Broadway and Banbury Mortgages authorize BANA to either collect escrow for certain items or allow Walton to pay the escrow items directly. Both Mortgages further authorize BANA to pay delinquent escrow items, including taxes, in order to protect its interest in the properties. Specifically, both Mortgages expressly state that:

> If Borrower is obligated to pay Escrow Items directly, pursuant to
> a waiver, and Borrower fails to pay the amount due for an Escrow

> Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.

BANA initially permitted Walton to pay the escrow items, including property taxes, directly. Prior to October 2009, BANA was not collecting an escrow amount from Walton on either loan.[1]

Lora J. Stanford, an Operations Team Manager for BANA testified based on her review of BANA's business records that on October 9, 2009, BANA received notice from the Tax Assessor that the property taxes for both the Broadway and Banbury properties were delinquent and would go to tax sale in March 2010 if not paid. In response to this notice, BANA acted consistent with the terms of the Mortgages by paying $23,304.82 to bring the taxes current for the Banbury Property on October 9, 2009, and paying $12,361.53 to bring the taxes current for the Broadway Property on October 13, 2009.[2] Walton was informed that as a result of the deficiency her monthly payments were increased for each loan in order to cover the escrow shortage as a result of BANA's outlay for the delinquent tax payments. For example, Walton was notified that, effective December 1, 2009, BANA would spread the escrow shortage for the Broadway Mortgage over twelve months and would increase Walton's monthly payment by $1,035.05.[3]

---

[1] Walton states that she did not request a waiver of escrow from Bank of America. Dkt. 151 at 2 and dkt. 155-5 at ¶ 16. Whether or not Walton requested a waiver is not material to the claims in this action.

[2] Walton does not claim that her taxes were current or that BANA did not pay the amounts stated to the tax assessor for her mortgaged properties.

[3] Without citation to admissible or supporting evidence Walton states that "notes show that the Indiana Assessors office sent Bank of America a bill for demolition of the property on Banbury Road [and] that Bank of America thought is [sic] was a bill for Taxes." Dkt. 151 at p. 2. This unsupported statement is insufficient to raise a material fact in dispute.

*Default*

Subsequent to the December 1, 2009, increase in Walton's monthly payments, she corresponded with BANA via letter and telephone. In response, BANA sent Walton a letter, dated March 29, 2010 ("March 29, 2010 Letter"), which addressed the amount of Walton's monthly payments moving forward. The March 29, 2010 Letter notified Walton that BANA had spread the escrow payments over 60 months instead of 12 to avoid such a large increase in her payment. It further notified Walton that the new monthly payment on the Broadway Mortgage was $1,654.68, effective March 1, 2010, and the new monthly payment on the Banbury Mortgage was $980.70, effective January 1, 2010. Consequently, as of March 1, 2010, Walton's total monthly payment for both Loans was $2,635.38.

The March 29, 2010, Letter also notified Walton that she was delinquent on both loans and both loans were overdue for the February 1, 2010, installment payments. Walton never cured these delinquencies.

Despite already being delinquent and having notice that her total monthly payment for both loans was $2,635.38, Walton sent BANA monthly payments in the amount of only $2,182.55 in April, May, June, July, August, and September of 2010. While BANA applied each of these checks to Walton's account, Walton continued to fall further and further into default each month on both the Broadway and Banbury Mortgages.[4]

---

[4] Walton states in her affidavit that "I have never been delinquent on my mortgages with Bank of America, I have always been current on my [sic] both of my loans with Bank of America, for both the Banbury and Broadway properties." Dkt. 155-5. However, Walton points to no documentation which could support this position, nor can she point to any such evidence because the undisputed evidence shows that Walton repeatedly defaulted on both mortgages by making monthly payments below the required amount. For example, she presents evidence that she made payments by check in the amount of $2,182.55, see dkt. 154-6, when she should have been paying $2,635.38. Walton does not argue, nor does she provide any evidence upon which a reasonable trier of fact could conclude that the BAC defendants' determination that her required monthly payment was $2635.38 was erroneous or that that amount was inconsistent with her mortgage and loan agreements. Other than her own unsupported testimony, Walton

Pursuant to both the Broadway and Banbury Mortgages, BANA has the right to reject and return any payment or partial payment if the payment is insufficient to bring the loans current. BANA has this right even if it accepted previous partial payments. Specifically, both Mortgages expressly provide that:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.

Dkt. 107-3 at 5, Broadway Mortgage; Dkt. 107-4 at 4, Banbury Mortgage.

BANA rejected and returned Walton's October, November, and December of 2010 monthly payments in the amount of $2,182.55 because they did not specify how the funds were to be applied and they were insufficient to bring the loans current. Walton made no further payments after the December of 2010 payment was rejected and returned.[5]

### BANA's Credit Reporting and Investigation

As a result of Walton's default, BANA reported her as being delinquent on both loans to credit reporting agencies. BANA reported Walton as delinquent on the Broadway Mortgage in January, February, July, August, and September of 2010.[6]  (Ex. 2, Stanford Aff., ¶ 42; Ex. 15, BANA Credit Reporting Summary for Broadway Mortgage.). BANA reported Walton as

---

has provided no evidence to dispute her default or to establish payments after December of 2010 that would have brought her account current, such that BANA would have needed to stop reporting her as delinquent to the credit reporting agencies. The defaults relevant to this lawsuit can be traced back to October 2009 when Plaintiff's escrow shortage drastically increased as a result of BANA's payment of delinquent taxes in the amount of $12,361.53 for the Broadway Property and $23,304.82 for the Banbury Property.

[5] Walton seeks to create a material fact in dispute regarding whether she received a copy of her escrow analysis statement. Dkt. 151 at p. 4; dkt. 155-5. Whether this statement was received is not inconsistent with the material facts presented by the defendants which Walton apparently seeks to attack.

[6] Credit reporting on the Broadway Mortgage stopped after September 2010, because a foreclosure lawsuit on the Broadway Property was filed in October 2010.

delinquent for the Banbury Mortgage in January, February, July, August, September, and December of 2010 and January 2011 until the present.[7]

On February 23, March 25, April 5, and May 25, 2011, and June 15, 2012, BANA received disputes from the credit reporting agencies as to its credit reporting on the Broadway and Banbury loans. The disputes, however, did not identify any specific month or months that were allegedly reported incorrectly; rather, the disputes simply disputed the account status and sought to verify the payment history. For example, the February 2011 dispute simply requested that BANA "[p]rovide or confirm complete ID and verify all account information," while the March 2011 dispute requested BANA to "[v]erify payment history profile, account status, and payment rating" and the April 2011 dispute again requested that BANA "[p]rovide or confirm complete ID and account information."

BANA's procedure after receiving a dispute from a credit reporting agency is to search the loan history for the payment being disputed and review the transaction date and due date to confirm whether the information reported was correct. Pursuant to procedure, BANA then responds to the dispute by completing an Automated Consumer Dispute Verification ("ACDV") Response[8] that either confirms the original reporting or provides the corrected reporting, and then submitting the completed ACDV Response to the credit reporting agencies.

BANA followed this procedure when responding to the February, March, April, and May 2011 and June 2012 credit reporting disputes for the Broadway and Banbury Mortgages. BANA reviewed Walton's loan and payment history for each dispute and found that the reporting of Walton's default on the loans was correct because both the Broadway and Banbury Mortgages were delinquent for the reasons set forth above. Consequently, BANA did not make any

---

[7] A foreclosure has not yet been filed for the Banbury Property.
[8] ACDVs are used for consumer reporting agencies to communicate information regarding consumer disputes to furnishers such as banks.

corrections to its credit reporting pursuant to the February, March, April, and May of 2011 or June of 2012 credit reporting disputes.

***Walton's November 4, 2010 Letter***

On November 4, 2010, Walton sent a letter to BANA ("November 4, 2010 Letter") requesting various information regarding the Broadway Mortgage. See dkt. 107-20.[9] BANA received the November 4, 2010, Letter on November 5, 2010. BANA preliminarily responded to Walton's November 4, 2010 Letter on December 3, 2010 ("December 3, 2010 Letter"). The December 3, 2010 Letter was sent to Walton via Fed Ex on December 7, 2010. On February 2, 2011, BANA further responded to Walton's November 4, 2010, Letter with a detailed letter ("February 2, 2011 Letter") that addressed the November 4, 2010 Letter.[10]

**B.      Discussion**

**1.      Count IV, FCRA**

As previously mentioned, Count IV of the Complaint alleges that the BAC defendants violated 15 U.S.C. § 1681s-2(b) of the FCRA by (1) reporting Walton's mortgages as late to credit reporting agencies without noting disputes, (2) failing to properly investigate Walton's dispute after receiving notice from credit reporting agencies of Walton's dispute, (3) failing to accurately respond to credit reporting agencies, and (4) failing to correctly report results of an investigation to credit reporting agencies. See Compl., dkt. 1, ¶¶ 44-51.

---

[9] Walton included large excerpts of this letter in her Material Facts in Dispute, dkt. 150 at p. 4-6. Walton's excerpts and the BAC defendants' authenticated copy of the letter submitted as an exhibit in support of its motion for summary judgment are consistent such that no material fact in dispute exists on this basis.

[10] Walton has submitted what purports to be a letter she sent to John Tillis on December 26, 2009, asking him to call her. See dkt. 150 at 4; dkt. 155-8 (letter). Whether or not Walton sent this letter to Tillis does not create a material fact in dispute. Similarly, whether Walton sent a qualified written request on May 2, 2010, is not material to the claims raised in her Complaint. See dkt. 150 at 4.

Under Section 1681s-2(b), "[w]hen a consumer reporting agency notifies a furnisher of a dispute with regard to an account, the furnisher of information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing 15 U.S.C. § 1681s-2(b)). "Courts have generally concluded that the FCRA requires 'reasonable' investigation and review, given the circumstances." *Shames-Yeakel v. Citizens Financial Bank*, 677 F.Supp.2d 994, 1004 (N.D. Ill. 2009); *Kennedy v. Equifax, Inc.*, 641 F.Supp.2d 788, 792-93 (S.D. Ind. 2009) ("[S]ummary judgment is proper if the reasonableness of the defendant's procedures is beyond question.").

The BAC defendants seek summary judgment on the basis that BANA complied with Section 1681s-2(b) and because its investigation was unquestionably reasonable. BANA received disputes from the credit reporting agencies as to its credit reporting on the Broadway and Banbury loans in February, March, April, and May of 2011 and June of 2012. These disputes did not identify any specific month or months that were reported incorrectly. For instance, the February 2011 dispute simply requested that BANA "[p]rovide or confirm complete ID and verify all account information," while the March 2011 dispute requested BANA to "[v]erify payment history profile, account status, and payment rating" and the April 2011 dispute again requested that BANA "[p]rovide or confirm complete ID and account information."

BANA followed its procedure to investigate each dispute. Specifically, BANA searched the loan history for the Broadway and Banbury Mortgages to inquire whether the information reported on the loans was correct. This investigation concluded that BANA's reporting on both

Mortgages was correct because Walton was in default of her loans as of October 2009. Pursuant to procedure, BANA then responded to each dispute by completing an ACDV Response to confirm that the original reporting was accurate. Based on the record evidence, BANA's investigation into each dispute was reasonable without question.

In response to the BAC defendants' motion for summary judgment, Walton failed to produce any evidence that disputes the reasonableness of BANA's investigation. She has not pointed to any evidence that creates a genuine issue of material fact that it was unreasonable for BANA's investigation to find that she was in default of her mortgages. In the absence of specific facts as to actions by BANA that were in violation of the statute, the BAC defendants are entitled to summary judgment. "A party who bears the burden or proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate . . . that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Oddly, Walton's response in opposition to the motion for summary judgment does not address any claims brought pursuant to 15 U.S.C. § 1681s-2(b), but instead asserts that her FCRA claims are brought pursuant to 15 U.S.C. § 1681s-2(a)(3), which provides:

> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3); see dkt. 151 at p. 10. This advances Walton nothing, however, because no private cause of action exists for claims based on violations of § 1681s-2(a). *Purcell v. Bank of America,* 659 F.3d 622, 623 (7th Cir. 2011) ("Section 1681s–2(c)(1) provides that the portions of the Act allowing awards of damages to private parties do not apply to claims under subsection (a)."). Indeed, the statute provides that subsection (a) "shall be enforced exclusively ... by the Federal agencies and officials and the State officials identified in section 1681s of this

title." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2nd Cir. 2012) (quoting 15 U.S.C. § 1681s–2(d)).

For these reasons, the BAC defendants are entitled to summary judgment in their favor as to Count IV of the Complaint.

### 2.    RESPA

#### a.    Count V

Count V of Walton's Complaint contends that the BAC defendants violated 12 U.S.C. § 2605(e) by failing to timely respond to Walton's November 4, 2010, written request and by failing to provide required information. The defendants seek summary judgment on the basis that the November 4, 2010 Letter does not constitute a qualified written request under RESPA's definition and because, even if it did, BANA responded to the November 4, 2010 Letter within the statutorily required time period. Moreover, the BAC defendants argue that Walton has failed to produce evidence of (and has not alleged any) actual damages and there is no statutory right to an accounting under RESPA.

In response, Walton argues that her November 4, 2010 Letter was a qualified written request and that the BAC defendants failed to timely provide the information requested or to prove relevant contact information.[11] Finally, Walton alleges that she incurred late fees, expenses, increased interest rates, and tax penalties as a result of the BAC defendants' violations.

---

[11] Walton also claims in her response brief that she also sent a May 2, 2010, letter which was a qualified written request. Dkt. 151 at 11. As explained above, however, no violations stemming from the May 2, 2010, letter were alleged in the Complaint and Walton cannot amend her Complaint through her response in opposition to summary judgment. Accordingly, the May 2, 2010, letter requires no further discussion. Similarly, Walton's attempts to raise for the first time in her response brief that the BAC defendants continued to report negative activity about Walton during the 60-day period after receiving her November 4, 2010 Letter in violation of 12 U.S.C. § 2605(a)(3) is disregarded. See dkt. 151 at 15. No violation of § 2605(a)(3) was alleged in Count V of the Complaint and thus any dispute regarding this provision is not relevant to the BAC defendants' pending motion for summary judgment.

As a preliminary matter, the Court has no hesitation in finding that Walton's November 4, 2010 Letter was a qualified written request. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) (citing 12 U.S.C. § 2605(e)(1)(B) and adding emphasis). The November 4, 2010 Letter is a written correspondence from Walton that requests information about her Broadway loan. She states that she disputes the amount owing on her loan and requests eleven categories of information. Walton was not required, as the BAC defendants contend, to identify the source of her dispute. *See Id.* at 687 (finding that any reasonably stated written request for account information can be a qualified written request). Of course, if Walton does not identify the source of her dispute with sufficient detail, the lender cannot be expected to review the account for potential errors. In any event, Walton sought information in a qualified written request and her claim in Count V of the Complaint is that the BAC defendants failed to provide that information.

The next issue is whether BANA timely responded to the November 4, 2010 Letter. It did. Walton sent a written request to the BAC defendants on November 4, 2010. BANA received that letter on November 5, 2010. Consistent with § 2605(e)(1), BANA had twenty days (excluding legal public holidays, Saturdays, and Sundays) to provide a written response acknowledging receipt of the correspondence. § 2605(e)(1)(A). Under these parameters, BANA had through Tuesday, December 7, 2010, in which to acknowledge receipt of the November 4,

2010 Letter.[12]  The record reflects that BANA timely acknowledged receipt of the November 4, 2010 Letter in its December 3, 2010 Letter that was sent on December 7, 2010. See dkt. 107-21.

Following the acknowledgement letter, BANA timely responded with its February 2, 2011 Letter prior to RESPA's 60-day deadline for substantive responses. See § 2605(e)(2) (effective Sept. 30, 1996, through July 20, 2011) (providing 60 days, excluding public holidays, Saturdays and Sundays to take action with respect to the inquiry).[13]

Contrary to Walton's assertions, the February 2, 2011 Letter specifically addressed each of the requests raised in the November 4, 2010 Letter. See dkt. 107-22 (copy of February 2, 2011 Letter); dkt. 107-20 (copy of November 4, 2010 Letter).[14] Walton's claim that the February 2, 2011 Letter failed to provide the requested information, to explain why the information was not available, or to provide contact information for the appropriate departments is directly contradicted by the record. The response was not perfunctory in that it provided the information sought or explained how that information could be viewed on the bank's website and further discussed with a customer service representative. Therefore, BANA did not violate § 2605(e) and summary judgment should be granted in the BAC defendants' favor as to Count V.

Finally, in order to succeed on her RESPA claim, Walton must prove that the BAC defendants' RESPA violations caused her actual damages. Thus, even if the BAC defendants violated RESPA as alleged in Count V, they are still entitled to judgment in their favor because Walton has failed to come forward with evidence sufficient to support an award of actual

---

[12] In effect, BANA had 32 calendar days to respond. Excluded from the calculation are five Saturdays, five Sundays and two holidays (Veterans Day, November 11, 2010, and Thanksgiving Day, November 25, 2010).

[13] In effect, BANA had through February 4, 2011, or 91 calendar days to respond in substance. Excluded from the calculation are thirteen Saturdays, thirteen Sundays and five holidays (Veterans Day, Thanksgiving Day, Christmas Day, New Year's Day and Martin Luther King Day).

[14] Unfortunately, the enclosures referenced in the February 2, 2011, Letter are not included in the record. However, there is no assertion that the enclosures were not actually mailed along with the letter.

damages. Under § 2605(f)(1), "[p]laintiffs must come forward with evidence sufficient to support an award of actual damages to pursue their RESPA . . . claim."[15] *Catalan*, 629 F.3d at 693.

Walton states that her affidavit shows damages suffered as a result of the RESPA violations. Dkt. 151 at p. 18. Specifically, she states that she has incurred improper late fees, charges, and expenses and that she has been unable to refinance or obtain a new mortgage. Contrary to Walton's assertion, her affidavit fails to set forth admissible evidence upon which to conclude that the BAC defendants' failure to provide certain information in response to her November 4, 2010 Letter caused her harm. Consequently, no recovery is available under Count V because Walton has failed to meet the actual damages requirement for a RESPA claim and the BAC defendants' are entitled to summary judgment in their favor on this basis.

### b.      Count VI

In Count VI, Walton requests that "Bank of America and BAC Home Loans Servicing LP be ordered to provide a strict and total explanation of the accounting of Plaintiff's loans." Compl., dkt. 1 at ¶60. The BAC defendants argue that they are entitled to judgment as a matter of law on this claim because there is no statutory basis for an accounting under RESPA.

In response, Walton argues that she "was not able to review any of the Designation of Evidence Documents listed as Exhibits nor Affidavits attached to the defendants' Motion in support of their Motion for Summary Judgment," and on this basis disputes that the absence of a material fact in dispute as to Count VI. Dkt. 151 at p. 19. This argument is frivolous and

---

[15]  RESPA also provides that a plaintiff can recover "any additional damages, as the court may allow, <u>in the case of a pattern or practice of noncompliance</u> with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1)(B) (emphasis added).   Here, however, that section is inapplicable because Walton has not alleged that BANA engaged in any type of "pattern or practice of noncompliance."  *See, e.g., Catalan*, 629 F.3d at 694 ("The plaintiffs do not contend that GMAC Mortgage engaged in a 'pattern or practice' of noncompliance, and so to prevail under RESPA they must prove actual damages.").

Walton's purported failure to review the defendants' evidence under the circumstances presented is inexcusable. First, Walton's various filings in opposition to the BAC defendants' motion for summary judgment have specifically referenced disagreements with statements made in documents included in the BAC defendants' Designation of Evidence. Second, the BAC defendants submitted their designation of evidence and associated documents on March 6, 2013. Walton's failure to rectify (or even raise) this issue until the last substantive paragraph of her memorandum in opposition to the motion for summary judgment filed more than three months later will not be tolerated. Finally, the BAC defendants' contention that there is no statutory basis for Walton's request for an accounting is based on a legal theory and not on any particular undisputed fact or document.

Walton has failed to identify any basis upon which the Court could conclude that RESPA requires the BAC defendants to provide an "accounting." Accordingly, the BAC defendants are entitled to summary judgment in their favor as to Count VI.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Walton has not identified a genuine issue of material fact as to her claims in this case, and the BAC defendants are entitled to judgment as a matter of law. Therefore, the BAC defendants'

motion for summary judgment [Dkt. 102] is **GRANTED** and Walton's cross-motion for summary judgment [Dkt. 152] is **DENIED.**

Judgment consistent with this Entry and with the Entries of February 17, 2012, and September 6, 2012, shall now issue.

**IT IS SO ORDERED.**

Date: 03/28/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

DEBORAH WALTON
PO BOX 598
Westfield, IN 46074